## N. H. MUTUAL FIRE INSURANCE COMPANY v. RAND & a.

Members of mutual fire insurance companies are holden to pay all legal assessments upon their premium notes during the period for which they are insured, unless there be something in the policy, charter and by-laws, or premium note, showing a different contract, or a discharge.

Where A. was insured in the N. H. Mutual Fire Insurance Company for six years, and gave his premium note, payable in such portions and at such times as the directors might, agreeably to their act of incorporation, require ; and the act provided that in case of failure to pay an assessment, the whole note might be collected and paid into the hands of the treasurer, and the amount retained to meet losses till the expiration of the policy ; and it appeared that the property insured was destroyed during the second year of the policy, and the amount of insurance paid to the assured—*held*, that the assured was liable to pay all legal assessments on the note till the expiration of the six years, in the same manner as though the property had not been destroyed.

Where a policy of insurance contained the provision, that when and so often as the property insured, or any part thereof, or any other of equal value built or

supplied in the room thereof, shall happen to be injured by means of fire, such damages shall be made good according to the estimate thereof—*held*, that the provision applied to partial losses, and to property built or supplied by the assured in the place of such as should be removed by themselves.

If an insurance company has been in the practice of surrendering the notes of its members, and cancelling their policies upon the happening and payment of losses, such practice cannot be shown to contradict or vary the written terms of a policy or premium note.

ASSUMPSIT, on a premium note dated December 9, 1848, given on the issuing of a policy of insurance by the plaintiffs to the defendants, for the sum of six hundred dollars, payable in such portions and at such times as the directors might, agreeably to their act of incorporation, require. The writ was dated September 12, 1851, and the declaration alleged an assessment on the 26th of August, 1850, of forty-two dollars, upon the note, and notice to the defendants. There was also a count on an account annexed, for the same assessment of forty-two dollars.

Plea, the general issue.

The note in question was given for the premium on a policy of insurance, made by the company at the same date, by which the plaintiffs insured the grist-mill of the defendants, situated in Lisbon, for the term of six years. A copy of the policy of insurance, the act of incorporation, and by-laws on the back of the policy, together with the defendants' application, made a part of the case, and so far as necessary will appear in the opinion of the court.

The grist-mill, on the 20th of September, 1849, was wholly destroyed by fire, except the flume and some other things of small value; and the company, after examination, paid to the defendants the sum of two thousand dollars before the commencement of this suit; which was the full amount of the insurance.

The assessment of forty-two dollars was duly made on the 26th of August, 1850, if by law the company had a right to assess the note for losses after the destruction of the mill. The assessment was payable December 1st, 1850.

Up to the time of the loss of the mill the defendants had paid

all assessments made by the company upon their premium note, but have refused to pay assessments since the loss, unless the company would hold themselves bound to insure the mill erected in the place of the one destroyed, as consideration for the assessments.

The new mill was of the same size as the old mill, and of equal value, and of the same description, and was completed in February, 1850, and notice given to the company February 12th, 1850.

The plaintiffs refused to give up the premium note, or to hold themselves bound to insure the new mill by virtue of the old policy, but claim the right to retain the old premium note, and assess it during the term of insurance.

The defendants offered to prove that up to the year 1840 the company had been in the habit, on the happening of a loss, to pay the amount, cancel the policy, and surrender the premium note, and make no assessment upon it after such loss; that at the time of the changing of the practice of the company in this respect, no change had been made in the policy, charter or by-laws of the company, which continue the same as before, and the defendants knew nothing about the change till after the loss.

The parties agreed to submit the cause to the decision of the court upon the foregoing facts. If the court should be of opinion that the facts offered to be proved would constitute any defence to the action, then the case was to be discharged and the action stand for trial by the jury. But if the court should be of opinion that the defendants, under the circumstances, were liable to be assessed for losses after the destruction of the building, then judgment was to be entered for the amount of the assessment and the interest from December 1st, 1850.

*Bellows*, for the plaintiffs. The question raised by the case is, whether, after the loss of the buildings, the company has the right to assess the premium note.

The substance of the contract is, that the plaintiffs insured the buildings of the defendants for six years, for a certain sum, to be paid as the directors require. On one side it is to insure the

buildings six years, and on the other to pay a sum of money. One is the consideration for the other. If the building is burned down and the loss paid, the contract is fully performed on the part of the company, and there is nothing more for them to do. And it is for the defendants to pay the premium. They can no more refuse to pay it than they could recover back a part, had it been paid in advance, as in stock companies. The premium is paid for the risk run by the plaintiffs; and if the building is burned, it surely will not be said that the risk is less.

To be sure the risk is not continuing, but the property has been fully insured, and the contract does not contemplate more than one payment of the value. Otherwise for one premium the plaintiffs might be compelled to pay twice, or insure the full value of the property. There is nothing in the contract of this kind. The misapprehension grows out of the fact that the premium is secured to be paid in instalments, instead of all being paid in advance. Had it been paid in advance, or had the time been one year instead of six, there could have been no doubt. But this is just the same. The contract is entire, to pay the two thousand dollars in case of loss, and for this promise and risk the premium is to be paid.

The clause in the policy in regard to buildings of equal value, built or supplied in the room thereof, applies to partial losses of buildings repaired by the company, and not to a case like this. It was doubtless competent for them to agree to insure a building by them so repaired. Even in that case the policy continues and the note is liable to be assessed, and the insured may be entitled to the insurance, in case of another loss. If it was so in this case, the defendants would have their claim on the company in case of loss, and could not resist the payment of the premium. And it makes no difference that the plaintiffs refuse to acknowledge themselves bound.

But it is clear that this clause applies only to partial losses, providing for the repairs of building injured by fire, which are to be made good as before. But the company cannot in all cases be compelled to pay beyond the stipulated sum. And such is the

practice, as we understand it, in all insurance companies. The case of total loss is provided for in another clause.

The clause, " or other of equal value," applies not to the whole building, but to a part thereof, that has been restored. These views are sustained by the first section of the charter. So section fourteenth supposes that the premium is payable after the loss. This is in conformity with the reason of the thing. It is a mutual company. The members mutually insure each other for an agreed premium. One member loses his property and gets his indemnity, and if then he is entitled to recall the premium, or a portion of it, or to refuse to pay what is unpaid, the deficiency so created falls on the rest. If each steps out as fast as his buildings burn, an increased burden is left on the rest, till at length the last member can look to no one for contribution in case of loss.

In this way the fund provided for indemnity is liable constantly to be diminished by the withdrawal of those who have got the full benefit of the contract. And should one be burned out before any other losses happen, such one would actually get his insurance for nothing; while the member whose building was last burned would get nothing, though he had paid the full amount of the premium note.

*Rand,* for the defendants.

1. The policy and charter, strictly construed, give the plaintiffs no such right as they claim.

We ask the attention of the court to the following clause in the policy : " We do therefore promise, according to the provisions of said act, to pay or satisfy them, their heirs, executors, administrators or assigns, the said sum insured, within three months next after the said property shall be burnt, destroyed, or demolished by, or by reason or means of fire, and notice thereof given as required by the act aforesaid, during the time this policy shall remain in force ; unless the directors shall, within the said three months, determine to rebuild or replace the property destroyed. And we do further promise, that when and so often as the property aforesaid, or any part thereof, or any other of equal value,

built or supplied in the place thereof, shall happen to be injured by means of fire, such damages shall be made good, according to the estimate thereof, or repaired and put in as good condition as the same was before such fire happened." We also desire to call the attention of the court to the second section of the charter.

The company promise to insure the defendants from loss by fire for six years, and the defendants are to pay assessments for six years. Now if they do not insure for six years, the insured need not pay assessments. The same thing that releases one from the contract releases the other. If the mill burns in six years the contract is broken on the part of the company.

Again : no person can be insured unless a member of the company. No person is a member unless insured in the company. The second section of the charter seems to favor this view.

2. At least, the plaintiffs' claim is not expressly granted by the charter, and the construction they have put upon the charter is a proper element in the case. It is said that policies of insurance are to have a liberal construction, and herein as to usage. 1 Philips on Ins. 43, § 10.

Evidence of the practice of the company is proper to be submitted to the jury, and they may infer from this that the plaintiffs intended this contract to be just what the defendants claim it was and is. Long acquiescence in any adverse claim of right is good ground on which a jury may presume that the claim had a legal commencement, &c. 1 Greenl. Ev. § 47. And again, admissions that have been acted upon by others are conclusive against the party making them. It is of no importance whether they are made in express language, or implied from the open and general conduct of the party; for in the latter case the implied declaration may be considered as addressed to any one in particular who may have occasion to act upon it. 1 Greenl. Ev. § 207.

EASTMAN, J. The policy issued by the plaintiffs sets forth in substance, that whereas the defendants had become members of the company, and had bound and obliged themselves, their heirs, executors, administrators and assigns, to pay all assessments that

might be made upon them, and had secured to the company the sum of six hundred dollars as the amount of the deposite or premium for insuring two thousand dollars during the term of six years, that the company agreed to insure the defendants for that time, and to pay or satisfy them, their heirs, executors, administrators or assigns the sum insured, within three months after the property insured should be burnt or destroyed by reason or means of fire, and notice thereof, during the time the policy should remain in force, unless the directors should, within the three months, determine to rebuild or replace the property destroyed. The policy also contained this further clause : " And we further promise, that when and so often as the property aforesaid, or any part thereof, or any other of equal value, built or supplied in the room thereof, shall happen to be injured by means of fire, such damage shall be made good, according to the estimate thereof, or repaired and put in as good condition as the same was before such fire happened."

The note in suit was for six hundred dollars. It bears the same date as that of the policy, and was payable in such portions and at such times as the directors might, agreeably to their act of incorporation, require. The eighth section of the act, after providing that assessments shall be made upon the members as the losses shall occur, enacts, that if any member shall for the space of thirty days after notice neglect or refuse to pay the sum assessed upon him as his proportion of any loss, in such case the directors may sue for and recover the whole amount of his deposite note, with costs of suit; and the money thus collected shall remain with the treasurer of the company, subject to the payment of such losses and expenses as have or may thereafter accrue ; and the balance, if any remain, shall be returned to the party from whom it was collected, on demand, after thirty days from the expiration of the term for which insurance was made.

It will be perceived that the company by their policy make two agreements in regard to losses. The first is, to pay or satisfy the defendants the sum insured, within three months after the property should be burnt or destroyed by fire, and notice thereof,

unless the directors should determine to rebuild. This clause of the policy refers to total losses. They agree to satisfy the defendants the sum insured after the property is destroyed. The second agreement is, that when and so often as the property insured, or any part thereof, or any other of equal value, built or supplied in the room thereof, shall happen to be injured by means of fire, such damages shall be made good according to the estimate thereof, &c. This clause refers to partial losses. It provides for making good the " damages"—not the payment of the whole sum insured;—when the property is " injured"—not destroyed.

The provision, " or any other of equal value, built or supplied in the place thereof," refers to cases where the owners shall themselves remove their old buildings and erect new ones in their stead. In such instances the new ones would continue insured unless they were so altered as to increase the risk. This is apparent from the thirteenth section of the charter, in which it is stated that no alteration or repairs in buildings, not increasing the risk or hazard, shall in any wise affect the insurance previously made thereon. Should the risk be increased, notice would have to be given and the premium note and policy altered accordingly; otherwise the policy would become void.

This policy was issued December 9th, 1848. The property insured was destroyed by fire September 20th, 1849; and the loss, to the extent of the whole insurance, was subsequently paid. The case, then, is one of total loss. And the company having paid the two thousand dollars, the full amount insured, have fulfilled their part of the contract. The extent of their engagement was to pay that sum and no more; and that they have done. They now call upon the defendants to perform what they allege to be their part of the contract; and one cannot doubt their right in so doing. The contract was mutual. The plaintiffs engaged to insure the defendants for six years, and the defendants agreed to pay such assessments as should, from time to time, be made upon their premium note, agreeably to the act of incorporation. The act of incorporation provides for assessments as

losses shall occur, and that upon a neglect or refusal to pay the sum assessed, the whole note may be collected and the avails applied as they might be required to meet the various losses; and if any balance should remain after the expiration of the policy, it should be refunded to the defendants. Now it appears to us that the tenor of the note, the provisions of the charter, and the nature of the contract, all unite in showing the liability of the defendants. An assessment has been duly made upon the note within six years from its date, and the defendants refuse to pay it unless the company will hold themselves bound to insure the grist-mill erected in place of the one destroyed, as consideration for the assessment. They insist that the contract is at an end, unless the plaintiffs will assume a further liability. If this be so; if the contract is terminated on the part of the defendants when the property is destroyed and they reimbursed for their loss, then would the contract be most unequal in its effects. To test the position, we will suppose the company to consist of six members, whose policies all bear the same date and are for six years. During the second year three of the number have their property destroyed, and assessments are made to meet the losses. If these three are no longer liable on their notes, the company is in effect reduced to one half its number. During the third year two others lose their buildings and their losses are paid, and upon the same principle they are no longer liable. Only half of the time has now expired, still the company is reduced to one member. He has contributed largely to meet the losses of his associates, but is left to insure himself the remaining three years, and to defray his own loss, unaided by the former members, should his property be destroyed. This cannot be so; the members must all be liable during the term for which they entered the company.

Again, to hold that the defendants are not liable, unless the plaintiffs will bind themselves to make good any loss on the mill erected in the place of the one destroyed, would be equally unjust. If, in order to make the defendants liable upon this note, the plaintiffs must be holden on this policy for a second mill erected, then also might they be on a third or even a tenth, should

so many happen to be destroyed during the six years; and thus, instead of paying the two thousand dollars which they originally contracted to pay, they would be compelled to pay twenty thousand. It appears to us quite clear that the views of the defendants upon this point are erroneous.

The evidence offered to show that the company were formerly in the practice of cancelling policies and surrendering notes on the happening of losses, would not aid the defendants, if proved. If, under a misapprehension of their legal rights, or from any other cause, they adopted for a time a practice that was unjust to the remaining members of the company, that cannot operate to change the terms or the legal effect of a written contract, whether it be the premium note given or the policy issued. We see no occasion to discharge the case in order to go into a trial upon this point.

The case is an agreed one. Were it not, an order would be made for judgment for the whole amount of the note, that the same might be paid into the hands of the treasurer, according to the provisions of the eighth section of the charter. As it is, judgment must be entered for the plaintiffs, according to the agreement, for the sum of forty-two dollars, with interest from December 1st, 1850.

*Judgment for the plaintiffs.*